## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PATRISHA MILLER,
individually and on behalf of similarly
situated persons,

      Case No. 2:23-cv-12251

      Hon. Brandy McMillion

      Plaintiff,

v.

SERENITY ASSISTED
LIVING, A & M INC.
MARY ABUAITA,
AND JORDAN ABUAITA,

      Defendants.

---

| | |
|---|---|
| David M. Blanchard (P67190) | Deborah Brouwer (P34872) |
| Kelly R. McClintock (P83198) | Nicholas Huguelet (P74933) |
| BLANCHARD & WALKER, PLLC | Nemeth Bonnette Brouwer PC |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |
| 221 N. Main Street, Suite 300 | 200 Talon Centre Drive, Suite 200 |
| Ann Arbor, MI 48104 | Detroit, MI 48207 |
| (734) 929-4313 | (313) 567-5921 |
| blanchard@bwlawonline.com | dbrouwer@nemethlawpc.com |
| mcclintock@bwlawonline.com | nhuguelet@nemethlawpc.com |

---

## JOINT MOTION FOR APPROVAL OF FLSA
## SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

    Plaintiff Patrisha Miller, by and through her undersigned counsel, respectfully

moves this Court for an Order:

    1.    Granting final approval of the Parties' Settlement Agreement as a fair

and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act

("FLSA").

2.     Approving the Gross Settlement Amount in resolution of this action.

3.     Approving the Named Plaintiff proposed service award to Named Plaintiff for her service to the FLSA Collective.

4.     Approving Plaintiff's unopposed request for attorneys' fees in the amount of one-third of the Gross Settlement Amount plus reasonable costs.

5.     Dismissing this action with prejudice and entering final judgment.

6.     Reserving exclusive and continuing jurisdiction over this action for purposes of supervising the implementation and enforcement of the Settlement Agreement and this Order.

This Motion is based on the accompanying Memorandum of Law, the Declaration of David M. Blanchard, and all other records, pleadings, and papers on file in this action. Pursuant to the terms of the Settlement Agreement, Defendants do not oppose this Motion.

Respectfully submitted,
BLANCHARD & WALKER, PLLC

/s/ David M. Blanchard
David M. Blanchard (P67190)
Kelly R. McClintock (P83198)
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313
blanchard@bwlawonline.com
Dated: February 7, 2025     mcclintock@bwlawonline.com

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

PATRISHA MILLER,
individually and on behalf of similarly
situated persons,                                    Case No. 2:23-cv-12251

                                                     Hon. Brandy McMillion

                        Plaintiff,

v.

SERENITY ASSISTED
LIVING, A & M INC.
MARY ABUAITA,
AND JORDAN ABUAITA,

                        Defendants.

---

| | |
|---|---|
| David M. Blanchard (P67190) | Deborah Brouwer (P34872) |
| Kelly R. McClintock (P83198) | Nicholas Huguelet (P74933) |
| BLANCHARD & WALKER, PLLC | Nemeth Bonnette Brouwer PC |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |
| 221 N. Main Street, Suite 300 | 200 Talon Centre Drive, Suite 200 |
| Ann Arbor, MI 48104 | Detroit, MI 48207 |
| (734) 929-4313 | (313) 567-5921 |
| blanchard@bwlawonline.com | dbrouwer@nemethlawpc.com |
| mcclintock@bwlawonline.com | nhuguelet@nemethlawpc.com |

---

## MEMORANDUM IN SUPPORT OF THE PARTIES' JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS

**TABLE OF CONTENTS**

ISSUES PRESENTED ........................................................ IV

CONTROLLING OR MOST APPROPRIATE AUTHORITY ....................... V

TABLE OF AUTHORITIES.................................................. VI

I.    INTRODUCTION.................................................1
II.   FACTUAL BACKGROUND...........................................1
III.  PROCEDURAL HISTORY ..........................................2
      A.   Notice to the FLSA Collective ..........................2

IV.   DISCOVERY AND MEDIATION EFFORTS ...........................3
V.    EXPLANATION OF THE SETTLEMENT ............................3
      A.   Settlement Amount and Allocation of Settlement Funds ...................3
      B.   Allocation Formula and Sufficiency of Settlement............................4
      C.   Released Claims ..................................................5

VI.   ARGUMENT ...................................................6
      A.   The Standard for Settlement Approval Under the FLSA Supports
           Approval of the Settlement ................................................6
      B.   The Settlement Agreement Is a Compromise of a Bona Fide
           Dispute ...........................................................7
      C.   The FLSA Settlement Is Fair and Reasonable ...................................9
           i.    Anticipated Burdens and Expenses of Litigation ......................11
           ii.   Seriousness of the Litigation Risks.............................................11
           iii.  Arm's-Length Bargaining Between Experienced Counsel........11
           iv.   Possibility of Fraud or Collusion ...............................................12
      D.   The Court Should Approve the Named Plaintiff Service Payment....13
      E.   Plaintiffs Counsel's Requested Award of Attorneys' Fees and
           Costs Should Be Granted....................................................15
           i.    The Requested Fee Award Is Reasonable ..................................15
           ii.   The Value of the Benefits to the Collective Support the
                 Requested Fees ...............................................................16
           iii.  Society's Stake in Rewarding Attorneys Who Produce the
                 Benefits to the Class in Order to Maintain an Incentive to
                 Others..............................................................................16
           iv.   Plaintiff's Counsel Undertook Considerable Risk in
                 Litigating This Case on a Contingency-Fee Basis....................17
           v.    The Lodestar Crosscheck Supports Approval ...........................18
           vi.   The Litigation Is Complex.......................................................19

ii

vii. Counsel's Skill on Both Sides Supports Approval ....................20

viii.The Requested Fees Are Comparable to Fees Awarded in
    Similar Cases ..............................................................................20

ix. The Court Should Grant Litigation Expenses............................21

VII.    CONCLUSION ..........................................................................................21

## <u>ISSUES PRESENTED</u>

I.   Whether the proposed Settlement Agreement is a fair and reasonable resolution of a *bona fide* dispute.

   Plaintiff's Answer:          Yes

   Defendants' Answer:       Yes


II.   Whether the Named Plaintiff service payment should be approved.

   Plaintiff's Answer:          Yes

   Defendants' Answer:       Yes


III.   Whether Plaintiff's requested attorneys' fees and costs should be approved.

   Plaintiff's Answer:          Yes

   Defendants' Answer:       Yes

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

*Brown v. AK Lawncare, Inc.*, No. 14-14158, 2017 U.S. Dist. LEXIS 71825 (E.D. Mich. May 11, 2017)

*Fegley v. Higgins*, 19 F.2d 1126 (6th Cir. 1994)

*Lynn's Food Stores, Inc. v. United States*, 769 F.2d 1350 (11th Cir. 1982)

*Osman v. Grube, Inc.*, No. 3:16-CV-00802-JJH, 2018 U.S. Dist. LEXIS 78222 (N.D. Ohio May 4, 2018)

## TABLE OF AUTHORITIES

### Cases

*Arp v. Hohla & Wyss Enters., LLP*, 2020 U.S. Dist. LEXIS 207512 (S.D. Ohio Nov. 5, 2020) ........................................................................ 19

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013) ................. 19

*Belmont v. Homes of Opportunity, Inc.*, No. 18-10854, 2018 U.S. Dist. LEXIS 209920 (E.D. Mich. Dec. 13, 2018) ........................................................ 15

*Bert v. AK Steel Corp.*, No. 02-CV-647 SSB, 2008 U.S. Dist. LEXIS 111711 (S.D. Ohio Oct. 23, 2008) ........................................................................ 12

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945) ........................................ 6

*Brown v. AK Lawncare, Inc.*, No. 14-14158, 2017 U.S. Dist. LEXIS 71825 (E.D. Mich. May 11, 2017) ............................................................. 6, 10, 20

*Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579 (S.D. Ohio Oct. 3, 2018) ............................................................. 18

*Enter Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991) ........................................................................ 11

*Farkas v. Boschert*, No. 17-cv-12536, 2018 U.S. Dist. LEXIS 105263 (E.D. Mich. June 25, 2018) ........................................................................ 20

*Fegley v. Higgins*, 19 F.2d 1126, 1134 (6th Cir. 1994) ........................................ 15

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ............. 9, 13

*Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011U.S. Dist. LEXIS 67887 (S.D. Ohio June 24, 2011) ........................................................................ 16

*Hadix v. Johnson*, 322 F.3d 885, 897 (6th Cir. 2003) ........................................ 13

*Hyun v. Ippudo USA Holdings*, No. 14-CV-8706 (AJN), 2016 U.S. Dist. LEXIS 39115 (S.D.N.Y. Mar. 24, 2016) ............................................................. 14

*Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-1061, 2013 U.S. Dist. LEXIS 74201 (May 25, 2013) ........................................................................ 14

*Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 794 (N.D. Ohio 2010) ....19

*Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 U.S. Dist. LEXIS
        181476 (S.D. Ohio Dec. 21, 2012) ...............................................................18, 19

*Lynn's Food Stores, Inc. v. United States*, 769 F.2d 1350, 1353
        (11th Cir. 1982).....................................................................................................6, 9

*Osman v. Grube, Inc.*, No. 3:16-CV-00802-JJH, 2018 U.S. Dist. LEXIS
        78222 (N.D. Ohio May 4, 2018).....................................................................7, 20

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).............15

*Rankin v. Rots*, No. 02-CV-71045, 2006 U.S. Dist. LEXIS 45706
        (E.D. Mich. June 27, 2006)..................................................................................10

*re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272
        (S.D. Ohio 1997).....................................................................................................13

*Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 386, 386 n.6
        (D. Md. 2006) ...........................................................................................................19

*Salinas v. United States Xpress Enters., Inc.*, No. 1:13-cv-00245, 2018
        U.S. Dist. LEXIS 50800 (E.D. Tenn. Mar. 8, 2018)............................................14

*Smolinski v. Ruben & Michelle Enters. Inc.*, No. 16-cv-13612, 2017 U.S.
        Dist. LEXIS 64088 (E.D. Mich. Apr. 27, 2017)....................................................20

*Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 U.S. Dist. LEXIS
        94450 (S.D. Ohio July 11, 2014) ..................................................................14, 15

*Williams v. Alimar Sec., Inc.*, No. CV 13-12732, 2017 U.S. Dist. LEXIS
        13530 (E.D. Mich. Feb. 1, 2017) .........................................................................7

## Statutes

29 U.S.C. § 216(b) .........................................................................................2, 6, 15

## I.      INTRODUCTION

Plaintiff Patrisha Miller ("Named Plaintiff"), by and through her counsel, moves for approval of the Parties' settlement. Because this settlement resolves claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), this Court need only apply a one-step approval process. As described below, this settlement is a fair and reasonable resolution of a *bona fide* dispute under the FLSA. Accordingly, Plaintiff respectfully requests that the Court issue an Order: (1) approving the Settlement Agreement, including the Gross Settlement Amount as fair and reasonable; (2) approving Plaintiff's attorney's fees in the amount of one-third and reasonable out-of-pocket litigation expenses; (3) approving a service payment to the Named Plaintiff in the amount of $2,500.00; and (4) dismissing this case with prejudice.

## II.     FACTUAL BACKGROUND

Defendants Serenity Assisted Living ("Serenity"), A & M Inc. ("A & M"), Mary Abuaita, and Jordan Abuaita (collectively, "Defendants") employ caregivers, such as Plaintiff and FLSA Collective Members[1], to perform non-skilled companionship and assisted services for Defendants' senior residents at their assisted living facility in Michigan. (*See* Compl. ECF No. 1, PageID.6). Although

---

[1] For purposes of this Motion, "FLSA Collective Members" means Named Plaintiff and the 19 Opt-In Plaintiffs who filed consent forms in this Litigation to participate in the FLSA Collective Action. (Settlement Agreement ¶ 11(m)).

1

the FLSA Collective Members were classified as non-exempt hourly employees, they allege Defendants did not pay them time-and-one-half for hours worked in excess of 40 in a week. *Id*. Furthermore, Plaintiff alleges Defendants often paid the Caregivers on a W-2 for their 40-hour workweek and any overtime was paid with cash. *Id*.

It is undisputed that Defendants paid Plaintiff and Opt-In Plaintiffs a straight hourly wage for all hours worked. Defendants deny that the FLSA Collective Members were paid cash for overtime and that Plaintiff and Opt-In Plaintiffs worked any overtime hours. (*See* Def. Answer ECF No. 8, PageID.39). Defendants contended that they paid the FLSA Collective Members properly and denied that they were legally obligated to pay overtime compensation.

## III.   PROCEDURAL HISTORY

On September 1, 2023, Plaintiff Miller filed this case, alleging that Defendants willfully failed to properly pay time-and-one-half for hours worked in excess of forty (40) in a week to employees performing caregiver services at their facilities (Compl., ECF No. 1). On November 2, 2023, Defendants filed their Answer to the Complaint (Answer, ECF No. 8).

### A. Notice to the FLSA Collective

On November 27, 2023, the Parties filed a Stipulated Order for Court-Approved Notice pursuant to 29 U.S.C. § 216(b). On December 1, 2023, the Court

entered an Order Granting FLSA Court-Approved Notice (Order, ECF No. 12). Plaintiffs administered notice using in-house resources in compliance with the Order. 19 individuals opted in to this case.

## IV.  DISCOVERY AND MEDIATION EFFORTS

Through discovery, Defendants produced employee records and schedules for the FLSA Collective Members. On November 20, 2024, the Parties attended mediation overseen by Magistrate Judge Anthony P. Patti. Following mediation, the Parties reached a settlement in principle. After a second mediation with Magistrate Patti on December 5, 2024, the Parties entered into a Settlement Agreement.

## V.  EXPLANATION OF THE SETTLEMENT

### A. Settlement Amount and Allocation of Settlement Funds

Pursuant to the Settlement Agreement, Defendants collectively agree to pay a total settlement amount (the "Gross Settlement Amount") within 60 days after entry of an Order of the Court approving this Settlement in exchange for a release and dismissal of this action. (Settlement Agreement, ¶ 20(a))[2]. The Gross Settlement Amount includes all settlement amounts to all FLSA Collective Members, attorneys' fees and out-of-pocket litigation expenses, and a service payment to the Named Plaintiff. (*Id.* at ¶¶ 16, 21).

---

[2] Pursuant to the Parties' Agreement, a copy of the full Settlement Agreement will be provided to the Court for *in camera* review.

3

The settlement allocates a service payment of $2,500.00 from the Gross Settlement Amount to the Named Plaintiff for her time and effort in securing the settlement and in exchange for a general release of claims. (*Id*. at ¶ 16). The settlement also provides for up to one-third of the Gross Settlement Amount in attorneys' fees and out-of-pocket litigation expenses. (*Id*. at ¶ 17). To date, Plaintiffs have incurred $792.07 in costs and expect to incur more related to administration of the settlement. (*Id*. at ¶ 21(b)).

### B. Allocation Formula and Sufficiency of Settlement

Defendants provided Plaintiff's Counsel with Named Plaintiff's and one Opt-in Plaintiff's payroll data beginning in July of 2022. (Ex. 1, Blanchard Decl. at ¶ 13). Plaintiff's Counsel reviewed this data and interviewed Named Plaintiff and Opt-in Plaintiffs and thereafter developed a damages model to reasonably estimate the overtime worked by each collective member. *Id.* Named Plaintiff's damages model considered a three-year statutory period based on the filing date of this action for all Opt-in Plaintiffs. (*Id*. at ¶ 20).

The payroll data showed that the individual damages potentially attributable to overtime pay were far eclipsed by the potential statutory penalties associated with the False Information Return (FIR) claims, which can cost $5,000.00 per violation. Given the uncertainty and difficulties of the case, counsel for both Parties agree that the settlement amount is fair and reasonable. The gross settlement amount represents

over $5,000.00 per person to each opt-in Plaintiff, and the net settlement amount is still very close to awarding each opt-in Plaintiff the same. (*Id* at ¶ 21).

The Gross Settlement Amount is approximately 720% of Plaintiff's estimate of unpaid overtime based on the longest possible limitations period, or approximately 360% of estimated unpaid overtime plus liquidated damages. After subtracting attorneys' fees and costs from the Gross Settlement Amount, the *net* settlement fund is $66,916.43—which is approximately 459% of total estimated unpaid overtime based on the longest possible limitations period, or approximately 229% of estimated unpaid overtime plus full liquidated damages.

In the alternative, Defendants' litigation exposure vis-a-vis Plaintiffs' FIR claims totals $5,000.00 per each Opt-in and Plaintiff. For the full twenty Plaintiffs, the Gross Settlement represents 105% of the statutory penalty associated with the FIR claim and the net settlement fund still provides about 67% of the statutory penalty. The Gross Settlement Amount will be distributed through Plaintiff's Counsel. (Settlement Agreement at ¶¶ 24, 29).

### C. Released Claims

Plaintiff and the FLSA Collective Members will release Defendants from/for all known and unknown claims that were or could have been asserted in Plaintiff's Complaint based on the facts alleged and that arose prior to December 5, 2024. (*Id*. at ¶ 12). This includes claims under state and federal law for unpaid overtime wages,

related claims for record-keeping penalties, interest, liquidated damages, attorneys' fees, costs, and expenses. *Id*. Any uncashed checks will be sent to the Genesee County Commission on Aging as a *cy pres* fund, and all opt-ins will be deemed to have released their claims.

## VI.   ARGUMENT

### A. The Standard for Settlement Approval Under the FLSA Supports Approval of the Settlement

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). The FLSA's pay requirements are mandatory and, except in two narrow circumstances, employees' rights under the FLSA are generally not subject to waiver by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945). One such circumstance, as here, is when a court reviews and approves a settlement in a private action for back wages. *Lynn's Food Stores, Inc. v. United States*, 769 F.2d 1350, 1353 (11th Cir. 1982).

In approving an FLSA settlement, the court must ensure that there is a fair and reasonable resolution of a *bona fide* dispute. *Id.* at 1354–55; *see also Brown v. AK Lawncare, Inc.*, No. 14-14158, 2017 U.S. Dist. LEXIS 71825, at *4 (E.D. Mich. May 11, 2017) (attached hereto as Exhibit 2) (citing *Williams v. K&K Assisted*

6

*Living LLC*, No. 15-cv-11565, 2016 U.S. Dist. LEXIS 9310, at *3 (E.D. Mich. Jan.

27, 2016)). In doing so, the court considers several factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; (5) and the possibility of fraud or collusion.

*Id.* (citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)

(internal quotation marks and citations omitted)).

Courts routinely apply a one-step approval process to FLSA settlements. *See*

*Osman v. Grube, Inc.*, No. 3:16-CV-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at

*3-4 (N.D. Ohio May 4, 2018) (attached hereto as Exhibit 3) (citing *Briggs v. PNC*

*Fin. Servs. Grp., Inc.*, No. 15-cv-10447, 2016 U.S. Dist. LEXIS 165560 (N.D. Ill.

Nov. 29, 2016)(stating that "[a] one-step settlement approval process is appropriate

in FLSA settlements.")). Because FLSA collective action members must

affirmatively opt-in to the case, approval of FLSA settlements does not implicate the

same due process concerns as approval of Rule 23 class action settlements. *Id.*

### B. The Settlement Agreement Is a Compromise of a Bona Fide Dispute

The Settlement Agreement reflects a compromise of a *bona fide* dispute. In

the context of an FLSA case, a *bona fide* dispute exists where "both parties face risks

if the Court determines the appropriate calculation of overtime pay." *Williams v.*

*Alimar Sec., Inc.*, No. CV 13-12732, 2017 U.S. Dist. LEXIS 13530, at *6 (E.D. Mich. Feb. 1, 2017) (attached hereto as Exhibit 4).

Here, the Parties dispute whether Plaintiff and the FLSA Collective Members were properly compensated for all overtime hours worked under the FLSA. Specifically, Named Plaintiff alleged that she and the FLSA Collective Members worked overtime hours for which they were not properly compensated because Defendants did not pay time-and-a-half, as required by law, for any additional hours worked over 40 hours in a workweek and were instead paid their normal hourly rate in cash for time over and above 40 hours. Named Plaintiff alleged that Defendants owed additional half-time pay for all hours worked over 40 in each workweek in addition to statutory penalties associated with False Information Return claims. Defendants argued that Opt-in Plaintiffs did not work overtime hours, and that they were paid properly.

After evaluating the evidence and performing their own investigation of the claims, the Parties agreed that significant risks remain with respect to liability and damages. First, the case is somewhat complicated by the fact that the owner of the company, Mary Abuaita, passed away in 2024. The future of the company is unknown at this time and could cease to exist at any moment as Ms. Abuaita's son, Jordan Abuaita, evaluates next steps concerning his mother's estate. Additionally, Plaintiff faces risk regarding the limitations period, as well as obstacles with proving

8

the alleged violations and damages based on lack of documentation. Further, Defendants contend that any FLSA violations were not willful, and thus a two-year, rather than three-year, statutory period is applicable.

Although the Parties continue to firmly believe in the merits of their respective claims and defenses, given the time, expenses, and risks associated with continued litigation, the Parties reached a settlement after extensive arm's-length negotiation. They desire to resolve this case by way of negotiated settlement payment by Defendants in exchange for a release of claims by Plaintiff and the FLSA Collective Members. Accordingly, this settlement reflects a compromise of a *bona fide* dispute between Plaintiff and Defendants.

### C. The FLSA Settlement Is Fair and Reasonable

At the core of *Lynn's Food* is the concept that FLSA settlements must "reflect a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." 679 F.2d at 1354. The Settlement Agreement here does not represent such overreaching, and an analysis of each of the five factors demonstrates that the settlement is fair and reasonable.

In determining whether a settlement amount is reasonable, "there is a range of reasonableness . . . which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186

(W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

The settlement in this matter represents a reasonable compromise, given the disputed facts and legal complexity of the case. Plaintiff's Counsel performed detailed calculations of the possible overtime damages of Plaintiff and each Opt-in Plaintiff. The Gross Settlement Amount represents approximately 105% of the Collective's damages attributable to at least one FIR claim, before attorneys' fees, costs, and service payments are deducted. (Exhibit 1 at ¶ 21). Moreover, the *net amount* to be received by the Collective compensates each and every opt-in well over 100% or more of their unpaid overtime. (*Id.* at ¶ 22).

The settlement awards represent a fair and reasonable resolution of the dispute and should be approved by this Court. *See Brown*, 2017 U.S. Dist. LEXIS 71825, at *7-8 (Exhibit 2) (finding that an FLSA recovery representing approximately 60% of the total amount of damages the plaintiffs could have recovered at trial was fair and reasonable); *Rankin v. Rots*, No. 02-CV-71045, 2006 U.S. Dist. LEXIS 45706, at *11 (E.D. Mich. June 27, 2006) (Exhibit 5) (finding settlement representing between 18 and 46 percent of the plaintiffs' claimed damages as being fair and reasonable). This recovery reflects both the litigation risks and the benefit of receiving a certain settlement amount now without protracted litigation.

The formula to determine each FLSA Collective Member's settlement award is also fair and reasonable. Each Collective Member will receive a *pro rata* share

from the Settlement Amount after attorneys' fees, costs, and service payments are deducted. Therefore, this factor supports settlement approval.

### i.  Anticipated Burdens and Expenses of Litigation

The Parties agree that the settlement represents a good value given the risks of continued litigation. If litigation continued, the Parties would need to engage in substantial written discovery and depositions. Moreover, the Parties would have litigated collective action treatment in Defendants' eventual motion for decertification and dispositive motions on liability, liquidated damages, and willfulness. The Parties thus desire to resolve this case by way of negotiated settlement payment by Defendants in exchange for a final judgment and release.

### ii.  Seriousness of the Litigation Risks

While Plaintiff maintains that her and the Collective Members' wage and hour claims are strong, Defendants vigorously dispute liability and damages, thus posing serious litigation risks. Defendants contend that their compensation of caregivers was lawful.

Given the risks and delay inherent in litigation, this factor supports approval. *See Enter Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991) (finding that settlement provided an immediate value to the class and minimized the costs that plaintiffs would incur in moving forward).

### iii. Arm's-Length Bargaining Between Experienced Counsel

Counsel for both Parties engaged in two arm's-length mediations with a qualified mediator and continued negotiations to reach this settlement. As described earlier, Plaintiff's Counsel investigated the applicable law and Defendants' pay records in determining that this settlement represents good value for Plaintiff's and the FLSA Collective's claims.

Plaintiff's Counsel have extensive experience in class action wage and hour litigation. Blanchard & Walker, PLLC was founded by David M. Blanchard and Angela L. Walker, each having nearly two decades of experience in both class action and individual employment rights litigation. (Exhibit 1 at ¶ 3). David M. Blanchard has specialized in representing employees in complex litigation matters since 2004 and has served as lead counsel or co-counsel in dozens of wage and hour class and collective action cases. (*Id* at ¶ 7). Plaintiff's Counsel agree that the settlement is fair and reasonable. Therefore, this factor supports settlement approval.

### iv. *Possibility of Fraud or Collusion*

This settlement was the result of significant, arm's-length negotiations between experienced attorneys who have extensive class action wage and hour litigation experience and knowledge of the legal and factual issues of this case. The settlement in this case was reached only after litigation, including discovery motions and issues related to default. There is no evidence of collusion among the Parties. The Parties worked with an experienced, neutral mediator (a U.S. District Court

Magistrate Judge) and continued to engage in settlement discussions following mediation to reach this settlement. *See Bert v. AK Steel Corp.*, No. 02-CV-647 SSB, 2008 U.S. Dist. LEXIS 111711, at *6-7 (S.D. Ohio Oct. 23, 2008) (Exhibit 6) (stating that "[t]he participation of an independent mediator in settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties.") This factor therefore supports approval of the settlement.

### D. The Court Should Approve the Named Plaintiff Service Payment

The Settlement Agreement provides for a Service Payment to Named Plaintiff Miller. (Settlement Agreement at ¶ 16). The Sixth Circuit has recognized that service payments are a way of "encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 885, 897 (6th Cir. 2003). Moreover, courts approving such service payments do so to recognize the risks that named plaintiffs incur during the course of class litigation. *See In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997). Courts have noted the importance of service payments in wage and hour cases like the present one, where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank*, 228 F.R.D. at 187-88.

Named Plaintiff brought this action on behalf of other caregivers who allege that they were not properly compensated for all overtime hours worked. Plaintiff contributed to the lawsuit by initiating the litigation, providing documents and information related to the claims, responding to Plaintiff's Counsel's questions, and making herself available by telephone during the mediations and subsequent settlement negotiations. (Exhibit 1 at ¶ 18). Plaintiff's efforts were integral to developing the theory of the case and providing information throughout the litigation, which benefited the collective in securing this settlement. *Id.*

The requested amount is similar to or less than those approved in this Circuit and in wage and hour actions in other jurisdictions. *See, e.g.*, *Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-1061, 2013 U.S. Dist. LEXIS 74201, at *19-20 (May 25, 2013) (approving a $12,500.00 service award out of a $452,380.00 gross settlement amount) (Exhibit 7); *Salinas v. United States Xpress Enters., Inc.*, No. 1:13-cv-00245, 2018 U.S. Dist. LEXIS 50800, at *28 (E.D. Tenn. Mar. 8, 2018) (Exhibit 8) (approving a $10,000.00 service award); *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *20 (S.D. Ohio July 11, 2014) (approving a $10,000.00 service award to each class representative) (Exhibit 9); *Hyun v. Ippudo USA Holdings*, No. 14-CV-8706 (AJN), 2016 U.S. Dist. LEXIS 39115, at *6 (S.D.N.Y. Mar. 24, 2016)(Exhibit 10) (approving a $30,000.00 service award that represented approximately 5% of the settlement fund, finding that was

"well within the range of service awards recently approved" in the district). The service payment here is reasonable and should be approved.

### E. Plaintiffs Counsel's Requested Award of Attorneys' Fees and Costs Should Be Granted

The FLSA permits plaintiffs to recover their attorneys' fees and costs under the statute's fee-shifting provisions. *See* 29 U.S.C. § 216(b). The amount of a fee award is within the discretion of the district judge. *Fegley v. Higgins*, 19 F.2d 1126, 1134 (6th Cir. 1994). Where a settlement includes payment of attorneys' fees, the court must assess the reasonableness of the fee. *Belmont v. Homes of Opportunity, Inc.*, No. 18-10854, 2018 U.S. Dist. LEXIS 209920, at *2-3 (E.D. Mich. Dec. 13, 2018) (attached hereto as Exhibit 11) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

#### i. The Requested Fee Award Is Reasonable

The percentage-of-the-fund method is regularly utilized and approved as the formula by which to calculate attorneys' fees. *See Wise v. Popoff*, 835 F. Supp. 977, 980 (E.D. Mich. Mar. 25, 1993); *see also Swigart*, 2014 U.S. Dist. LEXIS 94450, at *15 (finding that the percentage-of-the-fund was "the most appropriate method for determining reasonable attorneys' fees" in a wage and hour case). In considering the reasonableness of the requested fee award, the Sixth Circuit looks to the following six "*Ramey*" factors:

> (1) The value of the benefits rendered to the class;
> (2) Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;

(3)     Whether the services were undertaken on a contingent fee basis;
(4)     The value of the services on an hourly basis (the lodestar cross-check);
(5)     The complexity of the litigation;
(6)     The professional skill and standing of counsel on both sides.

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).

All factors weigh in favor of the requested attorneys' fees. Here, the Settlement Agreement provides for the payment of Plaintiff's attorneys' fees in the amount of one-third of the Gross Settlement Amount. (Settlement Agreement at ¶ 17). This amount is significantly less than fees actually expended.

### ii. *The Value of the Benefits to the Collective Support the Requested Fees*

Plaintiff Counsel's work resulted in the Gross Settlement Amount. After deductions for the requested attorneys' fees, out-of-pocket costs, and Named Plaintiff service payment, the net settlement fund will be distributed to Plaintiff and the FLSA Collective. Further, the settlement provides significant relief and eliminates the additional risks the Parties would bear if the litigation were to continue. Each FLSA Collective Action Member is receiving a significant recovery as compared to their unpaid overtime. Accordingly, the value of the benefits to the FLSA Collective weighs in favor of the requested fees.

### iii. *Society's Stake in Rewarding Attorneys Who Produce the Benefits to the Class in Order to Maintain an Incentive to Others*

Society's stake in rewarding attorneys who bring collective action wage and

hour cases favors the requested award. *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) (attached hereto as Exhibit 12) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.") Without this lawsuit, many of these individuals would not have had the resources to pursue their claims or even know they had unpaid overtime claims. Accordingly, this fact supports granting the fee request.

### iv. Plaintiff's Counsel Undertook Considerable Risk in Litigating This Case on a Contingency-Fee Basis

Despite the risks associated with prosecuting this case, including issues related to certification and damages, Plaintiff's Counsel took this case solely on a contingency-fee basis and were prepared to make this investment despite the practical uncertainty of a successful outcome. (Settlement Agreement at ¶¶ 29-30). Plaintiff's Counsel actively litigated this case by performing tasks integral to the successful resolution of this matter, including: (1) investigating the potential claims; (2) drafting the Complaint; (3) interviewing FLSA Collective Members regarding their claims; (4) preparing and serving Initial Disclosures; (5) briefing conditional certification; (6) performing detailed damage calculations and analyzing payroll data; (8) engaging in discovery; and (9) drafting, editing, and filing the Settlement Agreement and settlement approval papers. *Id.* Further, Plaintiff's Counsel will continue to represent Plaintiff and the FLSA Collective Members through the next

several months to answer questions about the settlement and distribute settlement checks. *Id.* This factor thus weighs in favor of awarding the requested fee.

### v. The Lodestar Crosscheck Supports Approval

Although courts recognize a percentage-of-the fund calculation of attorneys' fees in wage and hour cases like the instant case, the lodestar crosscheck also supports the requested attorneys' fees as reasonable. A summary chart of each attorney's and staff member's hourly rate and time spent on this case is included in the declaration of David M. Blanchard, attached as Exhibit 1.[3] These hours were reasonably spent. The work performed by Plaintiff's Counsel was instrumental in reaching a global settlement. Significant time and effort were spent by Plaintiff's Counsel in scrutinizing Defendants' payroll data and interviewing opt-in Members to properly analyze and present Plaintiff's claims.

The hourly rates here are also reasonable considering the complexity of collective action litigation, Plaintiff Counsel's extensive experience and the excellent recovery to Plaintiff and the FLSA Collective Members. Each attorney's and staff member's rates are supported by the market and consistent with other rates in this Circuit and nationally. *See, e.g.*, *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *17 (S.D. Ohio Oct. 3, 2018) (concluding that $675 for a senior attorney and between $250 and $400 for additional

---

[3] Plaintiff's Counsel can submit detailed records for *in camera* review if necessary.

attorneys were reasonable)(Exhibit 13); *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 U.S. Dist. LEXIS 181476, at *15-16 (S.D. Ohio Dec. 21, 2012) (concluding that $500 was a reasonable rate for two senior attorneys and rates between $100 and $450 were reasonable for other attorneys and involved staff) (Exhibit 14); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 794 (N.D. Ohio 2010) (approving attorney rates ranging from $325 to $650 and paralegal rates from $90 to $215 in complex class action); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 386, 386 n.6 (D. Md. 2006) (awarding rates of up to $595 per hour). Thus, the lodestar cross-check supports the requested fee award.

The requested fee award represents a lodestar multiplier similar to or less than that approved in other cases in this Circuit. *See, e.g.*, *Arp v. Hohla & Wyss Enters., LLP*, 2020 U.S. Dist. LEXIS 207512, at *19-22 (S.D. Ohio Nov. 5, 2020) (Exhibit 15) (finding that, although a lodestar cross-check was "not required," the multiplier of 5.29 before accounting for additional work was appropriate given the extensive wage-and-hour experience of the plaintiff's counsel); *Lowther*, 2012 U.S. Dist. LEXIS 181476, at *17-19 (citing cases approving multipliers ranging from 4.3 to 8.74).

### vi. The Litigation Is Complex

Wage-and-hour collective actions are complicated and time-consuming. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013). Moreover, if

the litigation continued, the Parties still faced dispositive motion practice and trial, which would require a detailed analysis of the fact, the law, and damages. Additionally, procedural hurdles may have prevented Plaintiff and the FLSA Collective Members from reaching the merits as a group because they would have been required to prove they were sufficiently "similarly situated" to continue as an FLSA collective. Accordingly, the litigation was difficult and complex, and this factor weighs in favor of awarding the requested fees.

### vii. Counsel's Skill on Both Sides Supports Approval

The skill and standing of counsel on both sides is substantial. Blanchard & Walker's counsel are qualified, experienced, and have substantial credentials in class and collective action litigation. Likewise, Defendants retained experienced counsel specializing in defense-side litigation with decades of experience in complex wage-and-hour class litigation. Therefore, this factor supports approval of the requested fee award.

### viii. The Requested Fees Are Comparable to Fees Awarded in Similar Cases

In percentage-of-the-fund settlements, courts routinely approve one-third of the settlement fund. *See, e.g.*, *Farkas v. Boschert*, No. 17-cv-12536, 2018 U.S. Dist. LEXIS 105263, at *6-7 (E.D. Mich. June 25, 2018) (attached hereto as Exhibit 16) (approving one-third of the total settlement amount in attorneys' fees); *Osman*, 2018 U.S. Dist. LEXIS 78222, at *13 (same); *Brown*, 2017 U.S. Dist. LEXIS 71825, at

*9-10 (approving fees amounting to 40% of the net recovery); *Smolinski v. Ruben & Michelle Enters. Inc.*, No. 16-cv-13612, 2017 U.S. Dist. LEXIS 64088, at *7-8 (E.D. Mich. Apr. 27, 2017) (attached hereto as Exhibit 17) (approving fees amounting to one-third of the settlement fund); *see also Wise*, 835 F. Supp. at 980 ("[F]ee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created.")

### ix. The Court Should Grant Litigation Expenses

In addition to attorneys' fees, Plaintiff's Counsel seeks out-of-pocket litigation expenses, which are currently $792.07. (Exhibit 1 at ¶ 40). Plaintiff's Counsel advanced the requested costs at the risk of no recovery. (*Id.* at ¶ 39). Those costs including filing fees, costs of service, and notice administration. Defendants do not oppose this request. Therefore, Plaintiff's Counsel requests that this amount for out-of-pocket litigation expenses be granted.

## VII. CONCLUSION

This settlement is the product of extensive arm's-length negotiations between experienced counsel and fairly and reasonably resolves a *bona fide* dispute. The Agreement and requested service payments, attorneys' fees, and costs satisfy the criteria set forth by the Sixth Circuit. Plaintiff respectfully requests that this Court enter the Proposed Order approving and effectuating the terms of the Agreement.

Respectfully submitted,

/s/ David M. Blanchard
David M. Blanchard (P67190)
Kelly R. McClintock (P83198)
*Attorneys for Plaintiff*
221 North Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313
blanchard@bwlawonline.com
Date:  February 7, 2025           mcclintock@bwlawonline.com

22

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 7, 2025, she electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notifications of such filings to all participating attorneys.

/s/ Leslie M. Wenzel
Leslie M. Wenzel, Law Office Assistant